JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANIA M. NASH,<br><br>                Plaintiff,<br><br>    v.<br><br>FCA US LLC, et al.,<br><br>                Defendants. | Case No.: 5:21-cv-02092-MEMF (KKx)<br><br>**ORDER GRANTING MOTION TO REMAND [ECF NO. 18] AND REQUEST FOR JUDICIAL NOTICE [ECF NO. 19]** |

      Before the Court is Plaintiff Brittania Nash's Motion to Remand (ECF No. 18) and her Request for Judicial Notice (ECF No. 19). On May 2, 2022, the Court deemed this matter appropriate for resolution without oral argument and vacated the hearing set for May 5, 2022. ECF No. 24; *see* C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court GRANTS the Motion to Remand and the Request for Judicial Notice.

/ / /

/ / /

1

# BACKGROUND

## I. Factual Background[1]

On or about July 25, 2020, Plaintiff Brittania Nash ("Nash") leased a 2015 Jeep Patriot vehicle ("the Vehicle") from Defendant Moss Bros. Chrysler Dodge Jeep Ram ("Moss Bros.") that had been manufactured or distributed by Defendant FCA US LLC ("FCA"). ECF. No. 1, Ex. A ("Compl.") ¶ 9. During the applicable warranty periods, the Vehicle developed multiple defects related to the electrical system, transmission, and engine that substantially impaired the use, value, or safety of the Vehicle. *Id.* ¶ 11. None of Moss Bros.' repair attempts remedied the defects to the Vehicle. *Id.* ¶ 12. As a result of these defects, Nash "suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00." *Id.* ¶ 13.

## II. Procedural History

On June 29, 2021, Nash filed this action in the Superior Court of California, County of Riverside, against FCA and Moss Bros. for: (1) violations of the Song-Beverly Consumer Warranty Act, CAL. CIV. CODE §§ 1790 *et seq.*; (2) fraudulent inducement; and (3) negligent repair. *See generally* Compl. On November 16, 2021, Nash filed a Request for Dismissal of Moss Bros. that was entered by the Court later that day. ECF No. 1 ¶ 1. On December 15, 2021, FCA removed this action to federal court, citing diversity jurisdiction under 28 U.S.C. § 1441(b). ECF No. 1 ("Notice of Removal"). Nash filed the instant Motion to Remand and Request for Judicial Notice on March 24, 2022. *See generally* ECF No. 18 ("Mot."), ECF No. 19 ("Request"). This Motion was fully briefed on April 21, 2022. *See* ECF Nos. 21 ("Opp'n"), 22 ("Reply"). The Motion was set for hearing on May 5, 2022.

# REQUEST FOR JUDICIAL NOTICE

## I. Legal Standard

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID.

---

[1] The facts set forth below are taken from the Complaint. ECF No. 1, Ex. A ("Compl.").

2

201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

## II. Nash's Request for Judicial Notice

Nash submits—and asks the Court to take judicial notice of—ten (10) exhibits in support of her Motion to Remand:

1. September 27, 2021 remand order in matter of *Gutierrrez v. Ford Motor Co.,* No. 2:21-cv-05679-MCS-JPR, 2021 WL 4399517 (C.D. Cal. Sept. 27, 2021) (ECF No. 19, Ex. A);

2. October 5, 2021 remand order in the matter of *Leigh v. FCA US LLC*, No. 8:21-cv-00316-JLS-KESx, 2021WL 4551864 (C.D. Cal. Oct. 5, 2021) (ECF No. 19, Ex. B);

3. April 28, 2021 remand order in the matter of *Savall v. FCA US LLC*, No. 21CV195-JM-KSCx, 2021 WL 1661051, at *1 (S.D. Cal. April 28, 2021) (ECF No. 19, Ex. C);

4. April 28, 2021 remand order in the matter of *Mahlmeister v. FCA US LLC*, No. CV2100564-AB-AFMx, 2021 WL 1662578 (C.D. Cal. April 28, 2021) (ECF No. 19, Ex. D);

5. June 18, 2020, remand order in the matter of *Feichtmann v. FCA US LLC*, No. 5:20-cv-01790-EJD, 2020 WL 3277479 (N.D. Cal. June 18, 2020) (ECF No. 19, Ex. E);

6. July 31, 2020 remand order in the matter of *Quinones v. FCA US LLC*, No. 2:20-cv-006144-RGK-JPRx, 2020 WL 4437482 (C.D. Cal. July 31, 2020) (ECF No. 19, Ex. F);

7. May 14, 2020 remand order in the matter of *Mullin v. FCA US, LLC*, No. 2:20-cv-02061-RSWL-PJWx, 2020 WL 2509081 (C.D. Cal. May 14, 2020) (ECF No. 19, Ex. G);

8. July 7, 2020 remand order in the matter of *Gonzalez v. Kia Motors America, Inc.,* No. 2:20-cv-04381-PA-JPRXx, 2020 WL 3790838 (C.D. Cal. July 7, 2020) (ECF No. 19, Ex. H);

9. September 29, 2020 remand order in the matter of *Bourland v. Ford Motor Co.*, No. 5:19-cv-08456-EJD, 2020 WL 5797915 (N.D. Cal. Sept. 29, 2020) (ECF No. 19, Ex. I); and

10. April 29, 2020 remand order in the matter of *Nejad v. FCA US LLC*, No. 220CV02252RGKAGRX, 2020 WL 2079983 (C.D. Cal. April 29, 2020) (ECF No. 19, Ex. J).

Although a district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss, the court may take judicial notice of matters in the public record. *Lee*, 250 F.3d at 689–90. The Ninth Circuit has recognized public records, including judgments and other court documents, as proper subjects for judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). When taking judicial records under notice, the Court may only do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690.

Here, the exhibits submitted by Nash fall into the category of judicial records that courts have deemed proper for judicial notice. The Court therefore GRANTS Nash's Request to take judicial notice of Exhibits A–J.

## MOTION TO REMAND

### I. Legal Standard

The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). Civil actions may be removed from state court if the federal court has original jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, [the party seeking removal] must demonstrate that original subject-matter jurisdiction must lie in the federal courts.").

As a result, removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010). Courts resolve all ambiguities "in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing

*Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). A removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing defendant must establish by a preponderance of the evidence that the amount in controversy "more likely than not" exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Under these circumstances, "both sides submit proof and the court decides, by a *preponderance of the evidence*, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (emphasis added) (citing 28 U.S.C. § 1446(c)(2)(B)). To meet this standard, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation and internal quotation marks omitted). Indeed, the parties must provide the court with "real evidence" that illustrates the "reality of what is at stake in the litigation" to guide the court in its assessment. *Id.* at 1198.

## II. Discussion

Nash argues that the Court should remand this action because FCA has not established diversity jurisdiction. Here, Nash does not dispute that the parties are diverse; rather, she challenges whether FCA has established that the amount in controversy exceeds $75,000. Mot. at 5–17. FCA insists that it has. Opp'n at 3–9. However, the amount in controversy is not clear from the face of the Complaint. Nash expressly pleads for damages "not less than $25,001.00," Compl. ¶ 13, but her Prayer for Relief does not indicate whether the total amount she seeks exceeds $75,000. *Id.* at Prayer.

As a result, FCA must show by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000. *See Guglielmino*, 506 F.3d at 699 ("[B]ecause the

allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and does not take account of attorneys' fees, accounting of moneys, or payment of back taxes and benefits, the complaint fails to allege a sufficiently specific total amount in controversy. The uncertainty which is inherent in the . . . Prayer for Relief places this case within the *Sanchez* line of cases, and we therefore apply the preponderance of the evidence burden of proof to the removing defendant."); *Sanchez*, 102 F.3d at 404 ("In deciding whether the district court had jurisdiction at the time it entered its judgment, the relevant test is . . . 'preponderance of the evidence' . . . ."). FCA asserts that the amount in controversy requirement has been met because Nash allegedly suffered: (1) actual damages of $14,094.73; (2) a civil penalty of $28,189.46; (3) an unspecified amount of attorneys' fees; and (4) at least $14,094.73 in punitive damages. Nash contends that FCA has failed to meet its burden because its proffered calculations are completely speculative.

### A. Nash's Actual Damages Are Uncertain

Under the Song-Beverly Act, actual damages are "equal to the actual price paid or payable by the buyer," minus the reduction in value "directly attributable to use by the buyer." CAL. CIV. CODE § 1793.2(d)(2)(B)–(C). The reduction is based on miles driven before the first attempted repair of the defect. *Id.*

FCA alleges that Nash's alleged actual damages of $14,094.73 were calculated in the following way: First, to calculate the "paid and payable amount," FCA used the total contract price paid ($18,324.01), plus an estimated amount of finance charges (estimated at $468.49), less theft deterrent devices ($1,690.00) and service contract charges ($2,999.00). Notice of Removal ¶ 20. Second, the mileage offset was calculated by subtracting mileage at purchase from the mileage at first repair for an alleged defect, dividing that amount by 120,000, and multiplying that sum by the total cash price of the vehicle.[2] FCA notes that mileage at the time of the lease signing was 64,855

---

[2] The Song-Beverly Act provides a formula to calculate the mileage offset. CAL. CIV. CODE § 1793.2(d)(2)(C) ("The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity."

6

miles and "anticipates that Plaintiff will argue the first attempted repair regarding transmission complaint occurred on July 27, 2020, at 64,948 miles." *Id.* ¶ 20 n. 1. As a result, the mileage offset calculation would be as follows: ((64,948-64,855)/120,000)*11,323 = $8.77. *Id.* Therefore, FCA contends that the amount of actual damages, equal to the total price paid of $14,103.50 less the mileage offset of $8.77, is $14,094.73, not including incidental and consequential damages, civil penalties, attorneys' fees, or punitive damages. Opp'n at 5.

Nash alleges that FCA's actual damages calculation is speculative because FCA's only proof is what it alleges "[u]pon information and belief to be a Retail Installment Sale Contract between Plaintiff and Moss Bros." Mot. at 8. Many courts have relied upon a Retail Installment Sale Contract, introduced as an exhibit to the attorney declaration in support of removal or an exhibit to the Complaint, to calculate the amount in controversy since it supplies the numbers necessary to input into the Beverly-Song Act formula. *See, e.g.*, *Elizabeth Cabrera v. FCA US LLC*, No. EDCV 21-1501 JGB (SHKx), 2022 WL 310133, at *3 (C.D. Cal. Feb. 1, 2022); *Alvarado v. FCA US, LLC*, No. 17-cv-00505-JGB-DTBx, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017). Nash has not provided any specific objection to the contents of the Retail Installment Contract, ECF 1, Ex. H ("RISC"), nor its authenticity. Absent any indication that the RISC is not valid, the Court considers the contract provided in calculating damages.

In addition, like FCA, these courts found the total cash price less mileage offset to be an appropriate measure of actual damages. *See, e.g.*, *Alvarado*, 2017 WL 2495495, at *4 (using "the total cash price paid for the subject vehicle" to calculate actual damages); *Luna v. FCA US LLC*, No. 21-cv-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 10, 2021) (concluding that "it is more appropriate to use the total cash price listed in the [contract]" when "the court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle."). Similarly, this Court finds that the total cash price of $18,324.01, taken from the Retail Installment Sale Contract, given that the record does not show whether Nash has paid all the finance charges that are included in the total sale price, is the appropriate amount to use when calculating actual damages. *See* RISC.

Nash further alleges that FCA has failed to provide essential facts about the purchase price and use of the Vehicle. Mot. at 8–9. In response, FCA cites to the RISC. Opp'n at 2. The Court notes that this is the only supporting document submitted by FCA in support of removal. As it relates to the use of the vehicle, FCA fails to submit any repair records indicating the nature of the defects, the date of service, or the vehicle mileage at the time of service. Instead, FCA includes a footnote in its Notice of Removal, explaining that the mileage offset calculation is based upon on an attempted repair occurring on July 27, 2020, at 64,948 miles. Notice of Removal ¶ 20 n. 1.

Given this evidentiary record, FCA has not alleged the threshold amount in controversy by a preponderance of the evidence. FCA must provide the court with "real evidence," including but not limited to any record or documentation from the July 27, 2020 repair visit referenced in the Notice of Removal. *Ibarra*, 775 F.3d at 1198; *see also Eberle v. Jaguar Land Rover N. Am., LLC*, No. 2:18-cv-06650-VAP-PLA, 2018 WL 4674598, at *2 (C.D. Cal. Sept. 26, 2018) (granting motion to remand where Defendant "offered no maintenance record or any other facts to assist the Court in determining what the actual damages might be without resorting to speculation"); *cf. Luna v. BMW of North America, LLC*, No.: 3:17-cv-02067-BEN-KSC, 2018 WL 2328365, at *3 (S.D. Cal. May 22, 2018) (denying a motion to remand on a Song-Beverly claim because the sales agreement and repair record allowed the court to determine actual damages with specificity). In the absence of this repair record, FCA is unable to show by a preponderance of the evidence what the mileage offset should be, and therefore what the total actual damages should be. Accordingly, the Court finds that FCA has not shown by a preponderance of the evidence that Nash's actual damages amount to $14,094.73.

### B. FCA's Calculation of Civil Penalties Is Uncertain

A plaintiff may be entitled to a civil penalty no greater than twice the amount of actual damages if they establish that the defendant's violations of the Act were willful. CAL. CIV. CODE § 1794(c). Many courts have held that a court may not simply assume the civil penalty; rather, a defendant is required to justify the assumption. *See, e.g., D'Amico v. Ford Motor Co.*, No. 20-cv-2985-CJC-JCx, 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020) (collecting cases). Such courts have held that courts do not include civil penalties in the jurisdictional analysis "unless the removing

defendant makes some showing regarding the possibility of civil damages." *See Savall v. FCA US LLC*, No. 21-cv-00195-JM-KSCx, 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (collecting cases).

In other instances, courts have pointed out that it is absurd to require the defendant to identify specific facts in support of an allegation it denies—namely its willfulness. This Court finds this reasoning to be persuasive; as a result, this Court finds that where the defendant has shown the alleged actual damages by a preponderance of the evidence and the plaintiff has alleged willful conduct, it is reasonable to calculate civil penalties in an amount twice the actual damages. *See, e.g.*, *Ghebrendrias v. FCA US LLC*, No. 21-cv-06492, 2021 WL 5003352, at *2 (C.D. Cal. Oct. 28, 2021) (calculating civil penalty amount where actual damages are non-speculative and plaintiffs allege that defendant's failure to comply with obligations of Song-Beverly Act was willful); *Rahman v. FCA US LLC*, No. 21-cv-02584, 2021 WL 2285102, at *2–3 (C.D. Cal. June 4, 2021) ("Defendant is not required to prove the case against itself. . . . Plaintiff here alleges that Defendant willfully and intentionally failed to comply with Song-Beverly. Accordingly, [t]he Court will consider civil penalties.") (internal quotations and citations omitted); *Brooks v. Ford Motor Co.*, No. 20-cv-00302-DSF-KKx, 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will den[y] that it willfully failed to comply with the Song-Beverly. It is sufficient that Plaintiff alleged an intentional failure to comply and sought the civil penalty.") (internal quotations and citations omitted). Here, Nash's Complaint alleges that she is entitled to a civil penalty and that FCA has engaged in willful conduct. Compl. ¶¶ 35, 36, 42, 45, 49, Prayer. Consistent with this Court's determination regarding what is required with respect to civil penalties, this is sufficient.

Nash also contends that FCA's estimate of civil penalties in this case are unsupported and speculative, given that civil penalties under the Act are based on actual damages and the actual damages in this case are unsupported. Mot. at 12; *see Leigh v. FCA US LLC*, No. 8:21-cv-00316-JLS-KESx, 2021 WL 4551864, at *3 (C.D. Cal. Oct. 5, 2021) ("[Defendant's] estimate of civil penalties in this case are also unsupported and speculative given that civil penalties under the Act are

based on actual damages."). Because this Court finds that FCA has not established actual damages by a preponderance of the evidence, the Court similarly finds that FCA's estimate of civil penalties in this case are not supported by the evidence and remain speculative.

As a result, this Court finds that FCA has failed to show by a preponderance of the evidence that a civil penalty amount of at least $28,189.46 should be included in the amount in controversy.

### C. FCA Fails to Establish Attorneys' Fees

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). However, a removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and to "make this showing with summary-judgment-type evidence." *Id.* at 795. "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.*

FCA does not provide a specific estimate of Nash's attorneys' fees. Instead, FCA states: "[A]ttorney fees in Song-Beverly matters routinely exceed $35,000.00 based on trial counsel's years of experience litigating breach of warranty claims in California." Opp'n at 8. FCA further cites to another Song-Beverly Act case brought by Nash's same counsel, who submitted fee requests for $108,135.31. *Id.* FCA contends that this "almost identical case" asserts the "same claims" by "the same Plaintiff's counsel" and is therefore relevant to the Court's inquiry. *Id.*

While there appear to be fundamental similarities, as Nash points out, FCA has failed to "compare *this* case to any of the potentially relevant cases referenced in the [Notice of Removal], or to specify how any of the potentially relevant cases in the [Notice of Removal] reflect a reasonable and accurate estimate of the attorneys' fees in this matter." Mot. at 14. FCA merely offers conclusory statements that the other action should be considered because it involves the "same claims" but does not sufficiently explain how the two cases are comparable. For these reasons, the Court finds that attorneys' fees should not be included in the amount in controversy.

///

///

### D. Punitive Damages Are Uncertain

Punitive damages are recoverable "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." CAL. CIV. CODE § 3294(a). In support of its assertion that punitive damages should be included in the amount in controversy calculation, FCA asserts that Nash seeks punitive damages for her fraudulent inducement claim. Notice of Removal ¶ 21.

However, the mere fact that a plaintiff seeks punitive damages does not necessarily establish the requisite amount in controversy. *See Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998) ("Defendant's burden cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim could total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages.").

As Nash notes, punitive damages are often calculated as a multiplier of the plaintiff's actual damages. Mot. at 14. Similar to calculating civil penalties, where actual damages are uncertain, any calculation of punitive damages would be speculative. As such, because FCA has been unable to show alleged actual damages by a preponderance of the evidence, any calculation of punitive damages is necessarily speculative.

### III. Conclusion

In light of the foregoing, the Court hereby GRANTS Nash's Request for Judicial Notice of Exhibits A–J and Nash's Motion to Remand.

IT IS SO ORDERED.

Dated: June 27, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge